NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BOBBY HARGROVE,  :  <br> : <br> Plaintiff,  : <br> : <br> v.  : <br> : <br> COMMISSIONER OF SOCIAL  : <br> SECURITY,  : <br> : <br> Defendant. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 04-CV-4767 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon the appeal of Plaintiff Bobby Hargrove ("Plaintiff") from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his request for Supplemental Security Income benefits ("SSI"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78. For the reasons stated below, it is the finding of this Court that the Commissioner's decision is based on a complete analysis and supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

**I. Background**

**A. Procedural History**

Plaintiff, alleging disability from severe medical impairments, filed an application for SSI on September 10, 2002. (Tr. at 47.) His claims were denied initially and on reconsideration. (Tr. at 23, 31,33.) On May 15, 2003, Plaintiff filed a timely request for hearing before an Administrative Law Judge. (Tr. at 38.) The hearing took place on March 18, 2004, before ALJ Richard L. De Steno ("ALJ"). (Tr. at 199.) The ALJ denied Plaintiff's application on June 9,

2004. (Tr. at 21.) Plaintiff filed a request for review with the Appeals Council, which was denied on August 5, 2004 (Tr. at 3, 6.) Upon that denial, the ALJ's ruling became the Commissioner's final decision. On October 4, 2004, Plaintiff filed the instant action.

**B. Factual History**

*1. Plaintiff's Testimony*

Plaintiff was born on December 20, 1961, in Newark, New Jersey. (Tr. at 203.) Currently, Plaintiff resides with his niece in Newark. (Tr. at 210.) Plaintiff worked as a mechanic for twenty-four years, and the work he was required to do involved a considerable amount of bending, stooping, and lifting. (Tr. at 204.) Plaintiff stopped working on or about December 21, 2001, as a result of a car accident. (Tr. at 203.) The car accident caused Plaintiff to suffer several injuries to his face, neck, back, and legs; the worst of which were to his legs. (Tr. at 204.)

Plaintiff testified that he suffers from general pain, pain in his legs, headaches, dizziness, chest pains, shortness of breath, high blood pressure, and deep depression. (Tr. at 206.) In December 2001, he underwent surgery on his right leg[1], having a metal rod placed in his leg. Plaintiff also complains that his right leg has constant fluid and swelling, numbness, and his kneecap is totally stiff. Id. In addition, he expressed that he has limited movement in his right knee[2], and he cannot bend to a complete stoop position. Id. Furthermore, Plaintiff noted that he cannot sit with his knees straight for more than one hour. Also, he cannot sit with his knees flexed. (Tr. at 211.)

---

[1]   Plaintiff had surgery on his right leg in high school; however, he noted that up until the accident his right leg did not bother him much. (Tr. at 204.)

[2]   Plaintiff noted similar, albeit less severe, problems in his left knee. (Tr. at 206.)

Plaintiff testified to experiencing daily headaches and dizziness.  He takes medication for high blood pressure, suffers shortness of breath with constant movement, and is anemic. (Tr. at 206-207.)  Plaintiff stated that he has trouble walking down stairs. (Tr. at 207.)  In addition, he stated that he can only lift up to ten pounds. (Tr. at 211.)

Plaintiff claims to suffer from depression.  (Tr. at 210.)  His alleged symptoms include feeling aggravated, feeling as if he has nothing to live for, and not knowing what to do with himself.  Id.  Plaintiff visited a psychiatrist one time for approximately twenty minutes to one hour, but has not received any ongoing treatment for depression.  (Tr. at 211-212.)

Plaintiff testified that he went to the hospital a few days before the hearing because he had shortness of breath and an elevated heart rate. (Tr. at 208.)  He stated that the doctors at the hospital discovered bleeding in his rectum as a result of his anemia.[3] (Tr. at 208.)

### 2. Medical Records Relating to Plaintiff's Physical Injury

On December 21, 2001, Plaintiff was admitted to the UMDNJ University Hospital trauma unit after being struck by a motor vehicle. (Tr. at 88-152.)  After extensive testing, the Doctors at UMDNJ diagnosed Plaintiff with right tibia/fibular fracture and anemia. (Tr. at 90.) Plaintiff denied any other injuries.  (Tr. at 101.)  Plaintiff underwent surgery, and doctors placed a intramedullary rod in his right leg without any complications. Id.  Due to his anemia, Plaintiff received a blood transfusion while in the hospital. (Tr. at 112.)  Plaintiff was discharged from the

---

[3]     At the start of the hearing, Plaintiff's attorney requested additional time to acquire more information regarding his client's recent hospital visit.  The ALJ continued the March 18th hearing, but left the record open until April 16, 2004. (Tr. at 201.)  Plaintiff again requested additional time to produce new medical records, and the deadline was extended to April 30, 2004. (Tr. at 11.)  However, Plaintiff failed to submit any additional medical records and the record was closed. Id.

hospital on December 26, 2001 upon being able to demonstrate independent ambulation with crutches (Tr. at 91.)

In February 2002, Plaintiff was examined by Dr. Ahmad. Plaintiff's complaints included pain and stiffness in both knees and in the right leg. (Tr. at 152.) Dr. Ahmad observed that Plaintiff walked with a limp, had difficulty walking heel-to-toe, and could not squat down. Id. Dr. Ahmad also noted swelling in both knees and swelling in the right leg. Id. An MRI revealed arthritis in both knees and that Plaintiff's right medial meniscus and medial ligament were torn. Id. In addition, Dr. Ahmad commented that the flexion of both knees was moderately restricted. Id. All McMurray's and Appley's tests were noted to be positive. Id. Dr. Ahmad's final diagnosis was a fracture of the right leg, internal fixation of the right leg, and derangement and arthritis in the right and left knee. (Tr. at 153.)

Dr. Ahmad examined Plaintiff again in May 2003. On this visit, Plaintiff complained of shortness of breath, chest pain, soreness in the neck and back, difficulty bending and lifting, an inability to stand or walk for extended periods of time, pain and stiffness in his legs and knees, and depression. (Tr. at 185.) Dr. Ahmad noted tenderness in the vertebral spine and restriction in the flexion and extension of the cervical spine. Id. In addition, the flexion and extension in the lower back were moderately restricted. Id. Plaintiff was able to walk heel-to-toe and squat, but did experience some difficulty. Id. Dr. Ahmad noted that Plaintiff walked with a limp and that both of his knees were swollen. (Tr. at 186.)

Dr. Ahmad's May 2003 final diagnosis stated that Plaintiff suffered from a spinal sprain, a fracture in the right leg with internal fixation, and internal derangement in both knees with arthritis. Id. Dr. Ahmad concluded that Plaintiff was "totally disabled as a physiological unit." Id.

On January 23, 2003, Dr. Sreedevi Menon performed an orthopedic examination of Plaintiff. (Tr. at 161.)  Dr. Menon noted that Plaintiff was able to do chores and take care of his personal needs.  Id.  Plaintiff's gait was normal, he could walk heel-to-toe without difficulty, he could fully squat, and he was able to rise from the chair without difficulty.  Id.  Dr. Menon assessed that Plaintiff had full motion in his back with no spinal tenderness.  Id.  Dr. Menon examined Plaintiff's knees and found mild restrictions in flexion and abduction and some restriction in the internal and external rotation. (Tr. at 162.)  Plaintiff's x-rays revealed mild to moderate osteoarthritic changes around the right knee, near total union at the tibial fracture, and partial union at the fibular fracture. (Tr. at 163.)

Dr. Menon diagnosed Plaintiff with a status-post fracture of the right leg, arthragias of both knees, and anemia.  Id.  Dr. Menon concluded that Plaintiff was mildly restricted in lifting heavy objects, prolonged standing, walking, and climbing stairs.  Id.  In addition, Dr. Menon perceived no restrictions with sitting or activities requiring fine motor activity.  Id.

On July 2, 2003, Dr. Sidney Friedman evaluated Plaintiff's medical condition as part of a request for a workers compensation claim.  (Tr. at 187-190.)  Dr. Friedman noted that during Plaintiff's employment as a mechanic, he was exposed to various environmental factors, temperature extremes, and excessive noise.  (Tr. at 187.)  In addition, Plaintiff's position at Star Shuttle Company involved repetitive bending and heavy lifting causing physical stress and strain.  Id.  Dr. Friedman posited that due to exposure and strain in the workplace, Plaintiff developed chronic respirtory symptoms and orthopedic and arthritic disabilities.  Id.

Dr. Friedman stated that Plaintiff's past medical history indicated that he could no longer work as a mechanic as a result of injuries sustained from the car accident.  Id.  Dr. Friedman also noted in his report that Plaintiff suffered from depression.  Id.  Plaintiff's physical complaints

included difficulty breathing, coughing, shortness of breath, stiffness and swelling in the right knee, and an inability to do any "heavy work" including lifting and bending.  Id.  At the time of the evaluation, he was not taking any medication.  Id.

Dr. Friedman's physical examination indicated that Plaintiff had a bilateral inspiratory and expiratory rhonchi throughout the chest, regular sinus rhythm, no cardiac murmurs, and normal heart sounds.  Id.  In addition, both knees were deformed, particularly the right knee.  There was limited motion in the right knee and a 2+ pretibial pitting edema, and the right calf was enlarged as compared to the left calf.  Id.  A chest x-ray revealed a straightening of the left ventricle border, scalloping of the right hemidiaphram, and an increase in perihilar vascularity with augmented pulmonary segments.  There was no evidence of congestive heart failure. Id.

Dr. Friedman assessed that Plaintiff had chronic occupational bronchitis with an estimated disability of thirty-five percent. (Tr. at 190.)  Dr. Friedman concluded that Plaintiff was totally disabled as a physiological industrial unit.  Id.

### *3. Medical Records Relating to Plaintiff's Mental Condition*

On January 22, 2003, Dr. Bernstein performed a psychiatric evaluation of Plaintiff.  (Tr. at 158.)  Dr. Bernstein noted that Plaintiff was mildly depressed due to concerns about "his current status and future."  Id.  Plaintiff's thought processes were "logical and coherent," and he was "vocationally capable of following and understanding simple directions and instructions, performing rote tasks with or without supervision, maintaining attention and concentration for tasks, and consistently performing simple work and learning new tasks."  (Tr. at 159.)  Dr. Bernstein concluded that Plaintiff suffered from an adjustment reaction reactive with mild depression, and that his symptoms were consistent with a period of adjustment after a motor

vehicle accident.  Id.  Dr. Bernstein assessed that Plaintiff was motivated and has a fair to good prognosis for employability.  (Tr. at 160.)

On August 15, 2003, Dr. Robert Latimer performed a psychiatric evaluation of Plaintiff. (Tr. at 192).  Dr. Latimer noted that after the car accident Plaintiff experienced a decrease in his social, work, home, and sleep functions.  Id.  Plaintiff appeared apprehensive and tired-looking, and displayed a worried, sad-looking expression.  Id.  His associations were unspontaneous, and his speech and motor activity was slow.  Id.  Plaintiff's memory, orientation, judgment, insight, concentration, intellectual capacity, and attention span were all within normal limits.  Id.  Dr. Latimer mentioned several objective signs of depression including decreased activity, poor personal hygiene, weight gain, depressed mood, decreased energy level, and slow intellectual functioning.  Id.  Dr. Latimer diagnosed Plaintiff as having adjustment disorder with depression.  (Tr. at 194.)  Dr. Latimer concluded that Plaintiff was totally and permanently disabled as a psychophysiological working unit.  Id.

## II. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.  Some types of evidence will not be "substantial."  For example:

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence –

> particularly certain types of evidence (e.g. that offered by treating physicians) –
> or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently
> explained the weight he has given to obviously probative exhibits, to say that his
> decision is supported by substantial evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to determine whether the
> conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected."  Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. The Five-Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Under the Social Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a & 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the

claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. Id. If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits. Id. Should the claimant be unable to return to his previous work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

**B. The Record Must Provide Objective Medical Evidence**

Under the Act, proof of a disability requires objective, medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A).

Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."). Furthermore, S.S.R. 96-7p provides that

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work);

11

Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability").

### III. Discussion

Plaintiff raises four arguments in support of his position that the ALJ's decision should be remanded. (Pl. Br. 10-23.) First, Plaintiff contends that the ALJ erred by not calling a medical expert for testimony regarding Plaintiff's impairments. (Pl. Br. at 10.) Plaintiff argues that the testimony of a medical expert at the hearing level is necessary to answer the question of whether there is an "equivalence" to one of the Listed Impairments. Id. at 13. Second, Plaintiff contends that the ALJ did not consider the combined effect of Plaintiff's impairments. Id. at 15. Third, Plaintiff contends that the ALJ improperly discounted medical evidence submitted by Plaintiff's attorney. Id. at 21. Fourth, Plaintiff contends that the ALJ erred by rejecting Plaintiff's testimony, which if considered, would establish a total disability. Id. at 23. The court rejects Plaintiff's arguments.

**1. The ALJ Did Not Err by Failing to Call for the Testimony of a Medical Expert**.

At the outset of the Administrative Hearing, Plaintiff's counsel requested that the ALJ call for an orthopedics expert to give evidence regarding whether or not there was a total union at the site of Plaintiff's fractures. (Pl. Br. at 10.) Plaintiff argues that the ALJ erred by failing to call upon an orthopedics expert and failing to give a reason why a ruling was not made on Plaintiff's request. Id. at 10-14. Plaintiff contends that a medical expert was necessary to determine whether Plaintiff's impairments met or equaled Listing 1.06 under the Regulations. Id. at 13.

The ALJ considered all medical evidence submitted and determined that Plaintiff's orthopedic impairment did not meet medical listing 1.06. (Tr. at 15.) The ALJ specifically

noted that he would consider testimony from an orthopedics expert if necessary.  However, the ALJ determined testimony from an orthopedics expert to be unnecessary because Plaintiff failed to establish an inability to effectively ambulate as required under 1.06B. (Tr. at 202, 15.) Therefore, the ALJ did not err by failing to call for the testimony of an orthopedics expert.

### 2. The ALJ Considered the Combined Effects of Plaintiff's Impairments.

Plaintiff argues that the ALJ did not adequately consider the combined effect of Plaintiff's obesity and his right leg fracture.  (Pl. Br. at 15.)  In addition, Plaintiff contends that the ALJ should have called a medical expert to determine whether the combined effects of Plaintiff's impairments met or equaled medical listing 1.06.

The ALJ considered the combined effect of Plaintiff's impairments and determined that his impairments did not meet or equal medical listing 1.06.  The ALJ noted that all impairments are considered individually and in combination when determining an individual's ability to perform work activities. (Tr. at 15.)  As mentioned above, the ALJ determined that Plaintiff failed to demonstrate an inability to effectively ambulate as required by 1.06B. Id.   The ALJ's conclusion was based on medical reports, which evaluated Plaintiff's impairments including his fractured right leg and obesity.  (Tr. at 15-16, 162.)  Dr. Menon, an orthopedic examiner, noted that Plaintiff had a normal gait, could walk heel-to-toe without difficulty, could squat, used no assistive device, was able to rise from a chair without difficulty and appeared to be in no acute distress.  (Tr. at 162.)  At the time of Dr. Menon's examination, Plaintiff weighed 340 lbs.  Id. Therefore, the ALJ concluded that the combined effect of Plaintiff's right leg fracture and obesity failed to meet the requirement of 1.06B because Plaintiff's medical records demonstrated an ability to effectively ambulate.  (Tr. at 15.)

### 3. The ALJ Properly Evaluated the Opinions of Doctors Latimer & Friedman.

The ALJ accorded little to no weight to the reports of Plaintiff's medical experts, Drs.

Latimer and Friedman. He based this decision in part on the fact that Drs. Latimer and Friedman frequently submit reports in Social Security disability cases, and the contents of those reports vary minimally from case to case. (Tr. at 17-18.)

The Third Circuit has held that even though an ALJ may consider the existence of boilerplate language as one factor in allocating appropriate weight to a medical report, he or she may not summarily reject a report solely because it contains language that duplicates prior submissions. See Miller v. Commissioner of Social Security, 172 F.3d 303, 305-06 (3d Cir. 1999). The Third Circuit explained that this rule "permits an ALJ to afford a rote report little weight in the appropriate case, but requires the ALJ to consider all aspects of the case before rejecting the report based solely on duplicative language." Id. at 306. Therefore, this court must determine if the ALJ properly considered all factors before dismissing the conclusions of Drs. Latimer and Friedman.

Plaintiff contends that the ALJ erred in discounting the report of Dr. Latimer. (Pl. Br. at 21.) However, a review of the record indicates that the ALJ properly accorded Dr. Latimer's report less weight because his ultimate conclusion was inconsistent with his objective findings and the record as a whole.

First, the ALJ noted that Dr. Latimer's conclusion was not supported by the doctor's "own objective findings." (Tr. at 18.) In the psychiatric report submitted by Dr. Latimer, he observed some objective signs of depression including decreased activity, poor personal hygiene, weight gain, depressed mood, decreased energy level, and slow intellectual functioning. (Tr. at 192.) Dr. Latimer remarked that Plaintiff's "memory, orientation, judgment, insight, concentration, and attention span were within normal limits." Id. In addition, Dr. Latimer noted that Plaintiff was "friendly, accessible, frank, polite and cooperative." Id. Also, Dr. Latimer listed a description of anxiety and how it limited Plaintiff's activities and work. Id. The only

limitations noted were a need for frequent rest and inability to stand or walk for long, which were both physical as opposed to mental limitations.  Id.  Dr. Latimer's objective findings made no mention of how Plaintiff's mental impairment would effect his ability to perform sedentary work.  Therefore, this Court finds that the ALJ was reasonable in determining that Dr. Latimer's objective findings did not support his conclusion.

Second, the ALJ determined that the record as a whole did not support the conclusions of Dr. Latimer. (Tr. at 18.)  Plaintiff testified that he had not received any ongoing treatment for depression and that he only received one mental examination, which lasted "about 20 minutes or an hour."  (Tr. at 212.)  In addition to Dr. Latimer's psychiatric evaluation, the Social Security's consultive psychologist, Dr. Bernstein, examined Plaintiff. (Tr. at 150.)  Dr. Bernstein noted that Plaintiff was mildly depressed, but his prognosis for employment was fair to good and he was "motivated." (Tr. at 160.)  Since the remainder of the record supports a determination that Plaintiff's depression was not severe enough to preclude him from performing sedentary work, the ALJ was reasonable to discount the conclusion made by Dr. Latimer.

The Court finds that the ALJ properly accorded no significant weight to the conclusion of Dr. Latimer.  The ALJ properly evaluated the substance of Dr. Latimer's report and the remainder of the record before dismissing the conclusion of Dr. Latimer.

Plaintiff also contends that the ALJ erred in discounting the report of Dr. Friedman because Dr. Friedman based his conclusions on objective evidence.  (Pl. Br. at 21.)  After a review of the record, this court determines that the ALJ was proper in discounting the report submitted by Dr. Friedman.

The ALJ noted that Dr. Friedman's report was initially prepared in connection with a worker's compensation claim. (Tr. at 187.)  Notably, the statutory test for disability in a worker's compensation claim is different from that under the Act.  See 20 C.F.R. § 404.1504 (1999);

Hartranft, 181 F.3d at 362 ("We have previously recognized the different standards for determining disability under these two programs.")(citation omitted); Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)("[T]he ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to worker compensation claims."). Accordingly, although the ultimate conclusion of a physician regarding a claim of disability is not binding on an ALJ, the objective medical facts should be considered by the ALJ. See Miller, 172 F.3d at 306-07. However, Dr. Latimer's "objective" medical findings were called into question by the ALJ because Dr. Latimer frequently submits strikingly similar reports in disability cases. Therefore, the ALJ accorded Dr. Friedman's report little to no weight because Dr. Friedman's conclusions were based on a workers compensation standard and Dr. Friedman's objectivity has been questioned by the ALJ and the courts. See Miller, 172 F.3d at 306.

In addition to arguing that Dr. Friedman's report was based on objective medical evidence, Plaintiff contends that the ALJ must accord Dr. Friedman's report controlling weight because there is no evidence in the record contradicting Dr. Friedman's conclusion. The court does not find this argument persuasive because Dr. Friedman's single report regarding occupational bronchitis does not constitute substantial evidence.

Plaintiff bears the burden of presenting substantial evidence that an impairment is severe and prevents him from engaging in gainful work. See Yuckert, 482 U.S. at 146-147. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" Perales, 402 U.S. 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). In the instant matter, Plaintiff only presented one medical report that concluded Plaintiff suffered from chronic occupational bronchitis. As noted above, this medical report's objectivity was compromised and the report followed a workers compensation standard. Therefore, the ALJ could not conclude that Plaintiff suffered a severe

impairment due to his chronic occupational bronchitis because the one medical report establishing this impairment did not amount to substantial evidence.

For the foregoing reasons, this court finds that the ALJ properly accorded the medical reports submitted by Drs. Latimer and Friedman little to no weight.

### 4. **The ALJ Properly Evaluated the Testimony of Plaintiff.**

Plaintiff claims that the ALJ erred in rejecting the testimony he gave at the hearing. (Pl. Br at 23.) Plaintiff takes issue with the fact that the ALJ did not specify the reasons for which he accorded Plaintiff's testimony less credibility. Id.

Ultimately, the ALJ has discretion "to evaluate the credibility of a Plaintiff's testimony and to render an independent judgment in light of the medical findings and related evidence regarding the true extent of such disability." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) aff'd, 85 F.3d 611 (3d Cir. 1996) (citing LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)). Here, the ALJ concluded that Plaintiff's complaints were "reasonable to a degree, but the overall record [did] not support them to the extent asserted." (Tr. at 16.) Specifically, the ALJ found that despite Plaintiff's complaints, his activities "[were] not significantly compromised." Id. The ALJ noted that in various portions of the record Plaintiff admitted to performing the following daily activities: "he can perform light household chores; he can take care of his personal needs; he can shop for small meals; and he can take walks." (Tr. at 16-17.) In addition, Plaintiff stated that he could not bend down into a stoop position. (Tr. at 206.) This was in contrast to the medical report by Dr. Menon, which noted that Plaintiff could squat fully with no assistive devices. (Tr. at 162.) Further, the ALJ conceded that Plaintiff "may experience some pain and complications," but noted that the record did not support "the degree of incapacitation alleged by the claimant." Id. at 17.

The record indicates that the ALJ specifically stated reasons why he accorded Plaintiff's testimony less credibility.  Thus, the Court is satisfied that the ALJ properly evaluated the testimony of Plaintiff.

### IV.  Conclusion

For the reasons stated above, it is the finding of this Court that the decision of the ALJ was supported by substantial evidence. The decision of the Commissioner is **affirmed**.


                                           S/ Den nis M. Cavanaugh
                                           Dennis M. Cavanaugh, U.S.D.J.


Date:   March 17, 2006
Orig:   Clerks Office
cc:     All Parties
        File